# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | | |
|---|---|---|
| GERMAN ROLANDO VICENTE-SAPON, | ) ) ) | Case Nos. 1:12-cr-106; 1:15-cv-187 |
| *Petitioner*, | ) ) | Judge Travis R. McDonough |
| v. | ) ) | Magistrate Judge Susan K. Lee |
| UNITED STATES OF AMERICA, | ) ) ) | |
| *Respondent*. | ) | |

## ORDER

This case is before the Court upon a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 ("2255 Motion") [Doc. 67] filed on July 20, 2015, and supporting memorandum filed by German Rolando Vicente-Sapon ("Petitioner") on July 5, 2017 [Doc. 76][1]. The United States of America (the "Government") filed a response to Petitioner's 2255 Motion on May 15, 2018 [Doc. 81]. Petitioner's 2255 Motion is now ripe.

## I.  BACKGROUND

The Sixth Circuit Court of Appeals explained the pertinent background of this case as follows:

> In 2006, a federal grand jury charged Sapon with importing an alien into the United States for an immoral purpose, in violation of 8 U.S.C. § 1328 (Count 1); interstate transport of a female for an immoral purpose, in violation of 18 U.S.C. § 2422(a) (Count 2); and interstate transport of a minor for the purpose of sexual activity, in violation of 18 U.S.C. § 2423(a) (Count 3). The charges were based on Sapon paying smugglers to bring his underage cousin, Yuria Vicente-Calel

---

[1] All citations to the record refer to Petitioner's criminal file. The Government's motion for an extension of time to respond to the 2255 Motion [Doc. 78] is **GRANTED** *nunc pro tunc*.

(Calel), from Guatemala to Chattanooga, Tennessee, for the purpose of engaging
in a sexual relationship with her. Sapon pleaded not guilty and was convicted by
a jury on all counts in November 2012. The district court sentenced him to 120
months of imprisonment for Count 1 and 188 months of imprisonment for Counts
2 and 3, all sentences to be served concurrently.

[Doc. 63].

As established at the trial, Yuria Maria Calel Vicente ("Yuria") was a 16-year-old minor when she arrived in the United States [Doc. 58 at Page ID # 204; Doc. 80 at Page ID # 505; [Doc. 59 at Page ID # 345] (Defendant incorrectly calculating Yuria's age as 17 when she arrived)].[2] Either on the first or second night of Yuria's arrival at Petitioner's residence, he had sex with her even though she was a minor [Doc. 58 at Page ID # 221; Doc. 59 at Page ID # 346-47]. Yuria become pregnant twice: the first pregnancy was voluntarily terminated and the second pregnancy resulted in the birth of Yuria and Petitioner's child [Doc. 58 at Page ID # 222-23]. While Yuria was living with Petitioner, he would introduce Yuria as his "wife" [Doc. 58 at Page ID # 226, 234; Doc. 59 at Page ID # 305, 307, 309, 313, 320]. In 2012 after Petitioner's separation from Yuria, Petitioner was interviewed by law enforcement agents after waiving his *Miranda* rights [Doc. 59 at Page ID # 300-03]. During this interview, Petitioner admitted responsibility for organizing Yuria's illegal entry into the United States [*Id.* at Page ID # 307-09]. He also admitted to knowing Yuria's birth year though he claimed ignorance as to the actual birthdate [*Id.* at Page ID # 306, 318-20] and the fact that Yuria was then underage [*Id.* at Page ID # 312-13 ].

During his sentencing allocution, Petitioner disputed the sufficiency of the evidence for his convictions but admitted to the sexual relationship with Yuria, claiming that she had "c[o]me[] after" him for a "sexual life." [Doc. 61 at Page ID # at 399-400]. When imposing

---

[2] The Government's motion [Doc. 79] to file the birth certificate [Doc. 80] under seal is **GRANTED**.

2

sentence, the Court affirmed that Petitioner "talked about this wicked, vicious, manipulative 16-year-old who deceived you and tricked you" and that Petitioner had "blame[d] everyone" instead of "focusing on [his] own actions," which included having sexual intercourse with a girl approximately the same age as his own daughter on her first night in his home. [*Id.* at Page ID # 406-07].

On appeal, Petitioner again denied there was sufficient evidence to support his convictions, claimed the Court erred in denying his motion to suppress, and argued his sentence was procedurally and substantively unreasonable [Doc. 63]. The Sixth Circuit ruled against Petitioner and affirmed the district court's judgment [*Id.*]. Petitioner filed a petition for writ of certiorari [Doc. 65], which was denied [Doc. 66].

Petitioner filed a timely 2255 Motion raising two grounds, both of which were labeled as ineffective-assistance-of-counsel claims. The first ground ("Ground One") alleges his counsel was ineffective for failing to properly investigate and challenge the authenticity of the documents supporting Yuria's age—Yuria's birth certificate and passport. The second ground is unclear,[3] but it seems that Petitioner is arguing his counsel was ineffective for not negotiating a plea agreement or explaining the potential reduction in his sentence had Petitioner pleaded guilty. Though not raised in his 2255 Motion, Petitioner requests an evidentiary hearing in his supporting memorandum, which was not filed until almost two years after the 2255 Motion was filed [Doc. 76 at Page ID # 494].

---

[3] *See* Doc. 67 at Page ID # 433 ("Counsel was ineffective at pretrial specifically before the beginning of trial, by not informing Petitioner Sapon a clear sentencing options wherefore violated his rights to a fair trial guaranteed under the Due Process Clause, and Petitioner also reserve the rights to file a brief insupport after this Court set up a briefing schedule for the parties." [*sic*]).

3

## II. STANDARD OF REVIEW

### A. Threshold Standard for § 2255 Relief

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence, if he claims that the sentence was imposed in violation of the Constitution or laws of the United States; that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude that had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353–54 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief[.]" *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal conclusions with no supporting factual allegations.'") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b),

Rule 8(a) requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. Petitioner's burden of establishing that he is entitled to an evidentiary hearing is relatively light. *Martin v. United States*, 889 F.3d 827, 831–32 (6th Cir. 2018). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required if "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Martin*, 889 F.3d at 832 (quoting *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (internal quotation marks omitted). Where a petitioner presents an affidavit containing a factual narrative that is neither inherently incredible nor contradicted by the record and the Government offers nothing more than contrary representations in response, the petitioner is entitled to an evidentiary hearing. *Id.* (quoting *Huff*, 734 F.3d at 607).

### B. Standard for Ineffective Assistance of Counsel

The Petitioner raises ineffective-assistance-of-counsel claims. Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff*, 734 F.3d at 606 (citation omitted). That test provides that, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by

5

demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective-assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on

6

the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

### III. ANALYSIS

#### A. Alleged Failure to Investigate Claims

Petitioner's first ground for relief alleges that his counsel was ineffective for failing to properly investigate Yuria's age and then to challenge the authenticity of the documents supporting her claimed age—Yuria's birth certificate and the passport—because she was really "an adult of 23-years old" when the criminal complaint was filed in 2012 [Doc. 67 at Page ID # 432]. Petitioner's argument seems to be confused. The charged crimes refer to his sexual relations with Yuria from April 2006 and September 2007 during which time Yuria was a minor. Yuria's attainment of the age of majority by the time that the Complaint was filed, August 16, 2012, is irrelevant. Her age at the time of *prosecution* does not bear upon the crimes committed by Petitioner.

Additionally, Petitioner faults counsel for not challenging the supporting documents confirming Yuria's birthdate. Contrary to Petitioner's argument, his counsel did raise the issue during Yuria's trial testimony [Doc. 58 at Page ID # 205-14]. Consequently, Petitioner's claim that counsel did not challenge the supporting document is without any foundation in the record. An allegation that is unsupported by the record cannot be used to satisfy *Strickland*'s prejudice prong. *Ross v. United States*, 339 F.3d 483, 494 (6th Cir. 2003).

To the extent that Petitioner alleges his counsel did not investigate otherwise, Petitioner does not identify what he believes his counsel should have investigated. Accordingly, he cannot demonstrate that his counsel was ineffective in this regard. *See United States v. Robson*, 307 F. App'x 907, 911 (6th Cir. 2009) (citing *Strickland*, 466 U.S. at 684) ("To show prejudice the

7

defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient conduct, the result of the trial would have been different.").

Even though Petitioner now claims that he believed Yuria to actually be Yamara Clarizza Colon Colon, a person alleged to be born on July 10, 1984 [Doc. 67 at Page ID # 443-44], Petitioner has not indicated he ever told this to his counsel nor does the record reflect the same. Attorneys are not clairvoyant, and an attorney does not perform deficiently by making investigative decisions based on the information supplied by the defendant. *Cope v. United States*, 385 F. App'x 531, 534 (6th Cir. 2010) (quoting *Strickland*, 466 U.S. at 691) (internal quotation marks omitted). Furthermore, Petitioner's alleged impression that Yuria was a different person is belied by his testimony at trial wherein he admits that when Yuria arrived at his home he believed she was 17, and thus was underage when Petitioner began sexual relations with her the next day [Doc. 59 at Page ID # 345-49].

Petitioner's untimely memorandum also faults counsel for not calling unnamed "family members" to corroborate his trial testimony and asserts that unspecified documents may have been "lost, removed, or altered" by the Government [Doc. 76 at Page ID # 491]. As argued by the Government, such unsupported claims do not "relate back" to any claim in Petitioner's timely 2255 Motion, nor has Petitioner provided any factual support for such assertions, so those claims are properly dismissed as either being untimely or undeveloped. *See, e.g.*, *Mayle v. Felix*, 545 U.S. 644, 657, 662 (2004) (holding that a new claim—even one arising from the same trial, conviction, or sentence—does not "relate back" unless it is based on the "same core facts" as a timely claim); *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (explaining that where "claims are stated in the form of conclusions without any allegations of facts in support thereof," a § 2255 motion is "legally insufficient to sustain review"); *O'Malley v. United States*, 285 F.2d

8

733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of veracity, are not sufficient to warrant a hearing," much less relief).

### B. Alleged Sentencing Options Claims

As stated earlier, Petitioner seems to make a second argument suggesting counsel was ineffective for "not informing petitioner . . . [of] clear sentencing options." [Doc. 67 at Page ID # 433]. In his memorandum, Petitioner explains this argument a little better by asserting his "decision to pursue a trial and not negotiate a plea offer was the result of defense counsel's unprofessional decision not to investigate the case. Counsel's failure to investigate and provide reasonably sound advice prejudiced the Defendant and resulted in a guilty verdict." [Doc. 76 at Page ID # 494].

As noted above, Petitioner was not denied effective assistance of counsel in challenging the authenticity of the documents supporting Yuria's age and has not identified any evidence demonstrating that counsel's assistance in investigating Yuria's age fell below an objective standard of reasonableness or was prejudicial. Beyond the conclusory statements in his 2255 Motion [Doc. 67 at Page ID # 433] and his supporting memorandum [Doc. 76 at Page ID # 493-94], Petitioner does not offer any evidence that would suggest that counsel gave incorrect advice, failed to give material advice, or actually failed to investigate the case. As Petitioner bears the burden to show that his counsel's performance was deficient and he has not pointed to any evidence that his counsel gave incorrect advice, failed to give material advice, or failed to investigate his case, he has not established his counsel's performance was deficient. *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013).

There is a recognized duty for defense counsel to explore a plea deal in some situations. *Compare Newman v. Vasbinder*, 259 F. App'x 851 (2008) (finding that although "adequate

9

representation by a criminal defense attorney entails exploring possible plea negotiations and deals," counsel's assistance was not ineffective where counsel "did not seek a plea agreement that she reasonably believed the prosecutor would reject, and that could not be reconciled with her client's version of the facts of the offense"), *with Martin v. Rose*, 717 F.2d 295, 296 (6th Cir. 1983) (affirming there was ineffective assistance when premised principally on total failure of counsel to mount a defense as opposed to the failure to pursue plea negotiations). In this case, however, by his own admission Petitioner made the decision to pursue a trial and not negotiate a plea offer [Doc. 76 at Page ID # 494 (asserting his "decision to pursue a trial and not negotiate a plea offer was the result of defense counsel's unprofessional decision not to investigate the case)]. His meritless claim that counsel did not adequately investigate the true age of the victim does not entitle him to relief.

Moreover, Petitioner has not credibly shown the Government would have offered a plea deal. *See Newland v. United States*, 443 F. App'x. 934, 935 (6th Cir. 2011) (rejecting a finding of prejudice where there was no evidence that a defendant would have accepted a plea deal had the Government offered one); *see also, e.g.*, *Delatorre v. United States*, 847 F.3d 837, 846–47 (7th Cir. 2017) ("Because Delatorre's prejudice argument centers on his *attorney's* inability to secure a plea agreement for him, Delatorre had to show—at a minimum—that the prosecutor would have actually offered him a deal had his attorney been competent." (emphasis in original)); *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005) ("Even assuming that [defense counsel's] performance was constitutionally deficient . . . [a petitioner]'s petition must fail because he has not established a reasonable probability that he would have pled guilty if properly advised by counsel."); *Getter v. Smith*, No. 12-11705, 2014 WL 320020, at *10 (E.D. Mich. Jan. 29, 2014) (rejecting a failure to secure a plea deal habeas claim); *United States v.*

*Cunningham*, Nos. 3-97-CR-263-R, 3-01-CV-1160-R, 2002 WL 1896932, at *4 (N.D. Tex. Aug. 14, 2002) (holding that defendant "provide[d] nothing to affirmatively show that the Government would have entered into any plea agreement" or "that she would have entered into such a plea"); *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000) (holding "the successful negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client, clearly absent here, as well as the cooperation of the prosecutor, who has no obligation to offer such an agreement."); *see also Weatherford v. Bursey*, 429 U.S. 545, 560-61 (1977) (holding "there is no constitutional right to plea bargain" and a prosecutor is under no legal obligation to consider or negotiate a plea with a defendant; the decision to offer a plea bargain is a matter of prosecutorial discretion); *Gaines v. United States*, No. 2:10-CV-221, 2:09-CR-52(1), 2014 WL 1267261, at *7 (E.D. Tenn. Mar. 26, 2014) (citations omitted) (internal quotation marks omitted) (finding no ineffective assistance of counsel because "no constitutional right was compromised" due to counsel's "fail[ure] to secure a plea deal").

### C. Request for an Evidentiary Hearing

Upon review of the motions, memoranda, responses, and the record, the Court finds that an evidentiary hearing is not required because the record conclusively shows that Petitioner is not entitled to relief as a matter of law. *See Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983) (explaining that an evidentiary hearing on motion to vacate sentence is not required to resolve purely legal issues). Petitioner's factual allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citations omitted) (internal quotation marks omitted). Petitioner's bald assertions and conclusory allegations do not provide sufficient ground to require an evidentiary hearing. *Thomas v. United States*, 849 F.3d

669, 681 (6th Cir. 2017).

## IV. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c)(1), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Where a claim has been dismissed on the merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings as to any of Petitioner's claims addressed on their merits. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA **SHALL NOT ISSUE**.

## V. CONCLUSION

For the reasons stated herein, the Count finds that an evidentiary hearing is unnecessary and Petitioner's 2255 Motion [Doc. 67] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**